949 So.2d 1256 (2007)
Goldie JACK
v.
ALBERTO-CULVER USA, INC.
No. 06-C-1883.
Supreme Court of Louisiana.
February 22, 2007.
Allen & Gooch, Michael Edward Parker, Lafayette, for Applicant.
Anthony Craig Dupre, Ville Platte, for Respondent.
VICTORY, J.
We granted this writ application to determine whether the lower courts were manifestly erroneous in finding that the plaintiff met her burden of proof under the Louisiana Product's Liability Act (the "LPLA"). After reviewing the record and the applicable law, we reverse the judgments of the lower courts which awarded damages in favor of the plaintiff.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Goldie Jack, purchased a package of Soft & Beautiful Botanicals Texturizer, manufactured and produced by defendant, Alberto-Culver USA, Inc. Plaintiff's niece, Shamanda Jack, who claimed to have a great deal of experience in applying similar hair care products, applied the product to plaintiff's head. Several days later, plaintiff noticed a sore on her scalp *1257 and hair loss. She was diagnosed and treated in the emergency room of the Ville Platte Medical Center for a staph infection. She was subsequently treated for two months by her physician.
Plaintiff filed suit against Alberto-Culver claiming she suffered damages as a result of the hair care product. She claimed that the product was unreasonably dangerous due to an inadequate warning, specifically that the warning should have instructed the user to perform a scalp test prior to use. At trial, plaintiff presented the testimony of Shamanda Jack, who testified that she read the instructions "but I do that all the time so it's like a process so you keep." She testified that prior to use, she did a "strand test" in which she applied the product to a strand of plaintiff's hair. She then checked to make sure the plaintiff did not have any sores on her head. She applied the texturizer and kept it on for 8-10 minutes, which was in accordance with the instructions, washed it out twice, shampooed it twice, then conditioned it and "wrapped it." Plaintiff testified that during the procedure, she informed Shamanda that she felt a burning sensation, although Shamanda said she did not complain until a couple of days later. Plaintiff testified that ten days later, she went to the emergency room for treatment.
Plaintiff also presented the "Instructions Usage Guide" that accompanied the product, which provided as follows:
WARNING: READ BEFORE USING
Follow instructions carefully to avoid skin and scalp burns, hair loss and eye injury. Do not use on bleached or permanently colored hair which is breaking, splitting or otherwise damaged. Product may cause skin or scalp irritation. If texturizer creme causes skin or scalp irritation, rinse out immediately and wash with shampoo inside kit.
This product is toxic. This product contains Sodium Hydroxide. KEEP THIS PRODUCT AND ALL OTHERS AWAY FROM EYES AND MOUTH. Product may be harmful, if accidentally gets in eyes or mouth. If product gets in eyes, wash eyes thoroughly with water. If product is swallowed, consult a physician immediately. Misuse of this product could cause hair loss or damage.
KEEP OUT OF REACH OF CHILDREN.
DO'S AND DON'TS:
Do discard excess product after use.
Do keep out of reach of children.
Do check scalp carefully for cuts or abrasions. If cuts or abrasions are present, don't use texturizer creme until scalp condition clears up.
Don't scratch or irritate scalp prior to texturizing your hair.
Don't use texturizer creme immediately after coloring your hair. Wait at least 2 weeks before texturizing.
Don't apply texturizer creme to hair permed with ammonium thioglycolate (curly perm).
Don't shampoo your hair before applying texturizer creme.
The plaintiff also presented her medical records which indicated that her condition was a "scalp abscess" which required draining caused by a staph infection, and that she incurred $2,030.38 in medical expenses related to the treatment of the infection.
After the hearing, the trial judge found in favor of the plaintiff. In his "Reasons for Judgment," he indicated that the warnings accompanying the product were inadequate, because they failed to warn the user to test the product prior to use. In reaching this decision, he stated:
Guidance in this case is found in Thomas v. Clairol, 583 So.2d 108 (La. *1258 App. 3 Cir.1991), wherein the court was faced with another issue of adequate warning in a hair product case. In Thomas, it was noted that the information accompanying the product included a caution that the product may cause skin irritations, as is the case in the present matter. The Thomas product, however, went further and warned that a "preliminary allergy test" should be conducted before applying the dye. The directions for the allergy test were "set forth at the beginning of the instruction" and a toll free number was provided for questions. The "allergy test section stood out well on the instruction sheet" in the Thomas case. As a result, it was held that these warnings were adequate.
In the present case, no such warnings existed other than the caution of the possibility of skin or scalp irritation, thus distinguishing the present case from Thomas. It is the finding of the court that the warnings accompanying the product in question were inadequate and that plaintiff's damages were caused by defendant's product.
The court of appeal affirmed in an unpublished opinion. Jack v. Alberto-Culver USA, Inc., 06-0238 (La.App. 3 Cir. 6/28/06), 933 So.2d 259. We granted defendant's writ application. Jack v. Alberto-Culver USA, Inc., 06-1883 (La.11/03/06), 940 So.2d 648.

DISCUSSION
To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. La. R.S. 9:2800.54(A). A product is "unreasonably dangerous" under the LPLA if and only if the product meets at least one of the following criteria: (1) the product is unreasonably dangerous in construction or composition as provided in La. R.S. 9:2800.55; (2) the product is unreasonably dangerous in design as provided in La. R.S. 9:2800.56; (3) the product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in La. R.S. 9:2800.57; or (4) the product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in La. R.S. 9:2800.58. La. R.S. 9:2800.54(B). "The claimant has the burden of proving the elements of Subsections A, B, and C[1] of this Section [9:2800.54]." La. R.S. 9:2800.54(D).
In a failure to warn case, the claimant bears the burden of establishing that "at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. R.S. 9:2800.57. The LPLA defines "adequate warning" as:

*1259 a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the danger for which the claim is made.
La. R.S. 9:2800.53(9).[2]
In this case, the plaintiff claims that the product was unreasonably dangerous because it contained an inadequate warning. Specifically, the plaintiff claims that the warning should have contained an instruction that the user perform a "scalp test" before applying the product. The factual evidence presented by plaintiff was as follows: (1) the warning accompanying the product, which proved that the product "possessed a characteristic that may cause damage;" (2) testimony that she used the product; and, (3) medical evidence that she subsequently developed a staph infection. However, in a failure to warn case, the burden is on the plaintiff to also prove that "the manufacturer failed to use reasonable care to provide an adequate warning of such [dangerous] characteristic to users and handlers[3] of the product." La. R.S. 9:2800.57.
Whether a particular warning or instruction is adequate is a question for the trier of fact. Bloxom v. Bloxom, 512 So.2d 839, 844 (La.1987). In this case, plaintiff presented no evidence, in the form of expert testimony or otherwise,[4] that the product was unreasonably dangerous because Alberto-Culver should have instructed the user to perform a scalp test. The trial court erred in simply relying on the facts presented in Thomas v. Clairol, supra, where such instructions were given, to find that Alberto-Culver should have also given an instruction, for the facts presented in that case provided no evidentiary factual basis to support the trial court's finding in this case.[5] Because plaintiff presented no factual evidence to satisfy her burden of proof, the trial court's judgment in her favor was manifestly erroneous.

DECREE
For the reasons stated herein, the judgments of the trial court and the court of *1260 appeal are reversed and the case is dismissed.
REVERSED.
JOHNSON, J., dissents.
NOTES
[1] La. R.S. 9:2800.54(C) provides:

The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.
[2] As commentators have noted, the "warning" under the LPLA must both alert and instruct in that "the warning must both lead the ordinary user or handler to contemplate the danger in using the product (the warning component) and to either use it safely (the instruction component) or decline to use it." Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law, 2004 Edition, § 15.11, p. 15-31.
[3] Because La. R.S. 9:2800.57 clearly provides that the warning is to be provided to "users and handlers" of the product, we reject defendant's argument that the plaintiff herself must have read the instructions in order to recover.
[4] We do not imply the adoption of a per se rule that expert testimony is always necessary. Rather, we simply point out that no evidence was introduced to satisfy plaintiff's burden of proof.
[5] For instance, there is nothing in the record which tells us if the chemicals used in the Thomas case were the same as those used in this case. In addition, the Thomas opinion stated that the Clairol warning included a "preliminary allergy test," and that the directions for the test were "set forth at the beginning of the instruction." However, nothing in the Thomas opinion indicated what the instructions for this test were, what the test entailed, or whether the "preliminary allergy test" in that case was the same as the "scalp test" that plaintiff argued was necessary in this case.

Further, although they did not include an instruction to perform a "scalp test," the 18 warnings and instructions given by Alberto-Culver in this case clearly satisfy the requirements of La. R.S. 9:2800.53(9).