# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CW 16-897 consolidated with CW 16-898, CA 18-221 & CA 18-223


MATTHEW M. WALKER

VERSUS

THE MANITOWOC COMPANY, INC., ET AL.

### CONSOLIDATED WITH

JIM LEE HANKINS

VERSUS

THE MANITOWOC COMPANY, INC., ET AL.


**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 11-9533 C/W 12-0052
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.

**REVERSED; WRITS DENIED.**

Franklin Glen Shaw
Walter Leger, Jr.
Walter Leger, III
Leger & Shaw
512 East Boston Street
Covington, LA 70433
Telephone:  (985) 809-6625
COUNSEL FOR:
    Plaintiffs/Respondents - Jim Lee Hankins and Matthew M. Walker

**Michael L. Barras**
**Oats & Marino**
**100 East Vermilion Street - #400**
**Lafayette, LA 70501**
**Telephone: (337) 233-1100**
**COUNSEL FOR:**
    **Plaintiffs/Respondents - Jim Lee Hankins and Matthew M. Walker**

**Edward Paul Landry**
**Landry, Watkins, Repaske & Breaux**
**211 East Main Street**
**New Iberia, LA 70560**
**Telephone: (337) 364-7626**
**COUNSEL FOR:**
    **Defendants/Applicants – Manitowoc Cranes, LLC, Westchester Fire Insurance Co., and The Manitowoc Company, Inc.**

**Michael Thomas Pulaski**
**Keith W. McDaniel**
**McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch, LLC**
**195 Greenbriar Boulevard – Suite 200**
**Covington, LA 70433**
**Telephone: (504) 831-0946**
**COUNSEL FOR:**
    **Defendants/Applicants – Manitowoc Cranes, LLC, The Manitowoc Company, Inc., and Westchester Fire Insurance Co.**

**Kevin M. Young**
**Prichard Hawkins Young, LLP**
**10101 Reunion Place – Suite 600**
**San Antonio, TX 78216**
**Telephone: (210) 477-7400**
**COUNSEL FOR:**
    **Defendants/Applicants – The Manitowoc Company, Inc., Westchester Fire Insurance Co., and Manitowoc Cranes, LLC**

**Harry Joseph Philips, Jr.**
**L. Adam Thames**
**Taylor, Porter, Brooks & Phillips L.L.P.**
**450 Laurel Street - 8th Floor**
**Baton Rouge, LA 70801**
**Telephone: (225) 387-3221**
**COUNSEL FOR:**
    **Defendants/Respondents - H&E Equipment Services, Inc. and Travelers Property and Casualty Company of America**

**John Hatch Hughes**
**David J. Ayo**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**Telephone: (337) 291-1290**
**COUNSEL FOR:**
 **Intervenor/Respondent - Bayou Welding Works, LLC**

**Dan Boudreaux**
**9100 Bluebonnet Centre Boulevard – Suite 300**
**Baton Rouge, LA 70809**
**Telephone: (225) 293-7272**
**COUNSEL FOR:**
 **Intervenor/Respondent - Liberty Mutual Insurance Corporation**

**Jake P. Skaggs**
**Cozen And O'Connor**
**Lyondell Bassell Tower**
**1221 McKinney – Suite 2900**
**Houston, TX 77010**
**Telephone: (832) 214-3900**
**COUNSEL FOR:**
 **Intervenor/Respondent - Allianz Global Corporate and Specialty Company**

**THIBODEAUX, Chief Judge.**

Plaintiffs, Matthew M. Walker and Jim Lee Hankins, filed separate suits seeking damages for personal injuries they sustained as a result of a worksite accident involving the alleged failure of a Manitowoc model 888 crane (crane) to hold the load upon which Plaintiffs stood, causing Plaintiffs to drop to the ground. Through multiple amended petitions, Plaintiffs sued several defendants, including the manufacturer of the crane, the Manitowoc Company, Inc., Manitowoc Cranes, LLC, and their insurer Westchester Fire Insurance Company (collectively Manitowoc).[1] With respect to their claims against Manitowoc, Plaintiffs alleged the crane was unreasonably dangerous because of an inadequate warning and/or defect in design or construction/composition as defined by the Louisiana Products Liability Act (LPLA). Plaintiffs' employer, Bayou Welding Works, LLC (BWW), and its insurer, Allianz Global Corporate and Specialty Company (Allianz) (collectively Intervenors), intervened in the suit, seeking property damages and consequential losses arising from the same accident.[2]

After the suits were consolidated, the parties filed opposing motions for summary judgment. The trial court denied Manitowoc's motion for summary judgment in which Manitowoc sought to have Plaintiffs'/Intervenors' claims

---

[1] The claims against one service provider, H&E Equipment Services, Inc. (H&E), are discussed in the companion case, *Matthew M. Walker v. The Manitowoc Company, Inc., et al.*, consolidated with *Jim Lee Hankins v. The Manitowoc Company, Inc., et al.*, 17-1014, 18-186 (La.App. 3 Cir.), __ So.3d __. These claims will not be discussed further in this opinion. All other defendants were either dismissed or settled with Plaintiffs/Intervenors, except for Manitowoc and H&E.

[2] Liberty Mutual Insurance Corporation (Liberty), the workers' compensation carrier for Plaintiffs' employer, intervened in the lawsuits as well, adopting the allegations set forth by Plaintiffs pursuant to the Louisiana Workers' Compensation Act. Liberty adopts Plaintiffs' position in its brief to this court.

dismissed on the grounds that the crane was not being used in a reasonably anticipated manner when the accident occurred or, alternatively, that Plaintiffs/Intervenors could not prove the existence of a defect that caused their damages. The trial court granted partial summary judgment in favor of Plaintiffs/Intervenors, finding that Manitowoc, as manufacturer of the crane, had breached its non-delegable duty to warn of defects in the crane. The trial court also denied Manitowoc's motion to dismiss and for sanctions due to spoliation of evidence.

Manitowoc sought supervisory writs from the judgment denying its motion for summary judgment, in docket number CW 16-897, and the judgment denying its motion for dismissal and spoliation sanctions, in docket number CW 16-898. It also appealed the judgment granting Plaintiffs'/Intervenors' motion for partial summary judgment in docket numbers CA 18-221 and CA 18-223. Upon Manitowoc's motion, we consolidated the appeals with its writs.

In light of the complex factual issues, we find that, on the record before us, this matter is not ripe for summary judgment on any of the claims made by the parties at this time. We further find that the trial court did not abuse its vast discretion in refusing to impose spoliation sanctions. Accordingly, we reverse the trial court's judgment granting partial summary judgment on Manitowoc's duty to warn and render judgment denying both writs.

I.

## ISSUES

In its writ applications, Manitowoc raises the following issues for review:

(1)     Should summary judgment be entered, dismissing Plaintiffs' claims against Manitowoc, because the manner in which Hankins and Walker were using the Manitowoc model 888 crane at the time of the incident – riding a suspended load – is a violation of BWW's safety policy, well-known OSHA standards, and other guidelines, and was a reasonably anticipated use of the crane;

(2)     Should summary judgment be entered, dismissing Plaintiffs'/Intervenors' claims against Manitowoc, because the Manitowoc model 888 crane was poorly maintained and overloaded, and this was not a reasonably anticipated use of the crane;

(3)     Should summary judgment be entered, dismissing Plaintiffs'/Intervenors' claim that the Manitowoc model 888 crane was unreasonably dangerous in construction or composition under the LPLA, because Plaintiffs/Intervenors failed to demonstrate an unreasonably dangerous condition in construction or composition that existed at the time the subject crane left the custody and control of Manitowoc;

(4)     Should summary judgment be entered, dismissing Plaintiffs'/Intervenors' claim that the Manitowoc model 888 crane was unreasonably dangerous due to an inadequate warning under the LPLA, because Plaintiffs/Intervenors have not shown an alternative warning that would have been heeded by BWW and prevented the incident;

(5)     Should summary judgment be entered, dismissing Plaintiffs'/Intervenors' claim that the Manitowoc model 888 crane was unreasonably dangerous in design under the LPLA, because Plaintiffs/Intervenors have not shown that there was a feasible alternative design that could have prevented the incident, as required for them to prove a defect in design;

(6)     The trial court erred in failing to exclude inadmissible exhibits to Plaintiffs'/Intervenors' Opposition under Louisiana C.C.P. article 966(A)(4); and

(7)     Given that Intervenor BWW possessed the drum adapter and specifically agreed to safeguard it for

3

further inspection, should the loss, destruction or intentional refusal to produce this critical evidence, without an adequate explanation, result in the dismissal of certain claims, or at least an evidentiary presumption that the evidence would have been unfavorable to Plaintiffs and Intervenors?

On appeal, Manitowoc asks this court to consider:

(1)     Should summary judgment be denied as to Plaintiffs'/Intervenors' failure to warn claims because genuine issues of material fact exist regarding the cause of the subject incident as the trial court itself recognized in denying Manitowoc's Motion for Summary Judgment;

(2)     Should summary judgment be denied as to Plaintiffs'/Intervenors' failure to warn claims because genuine issues of material fact exist regarding whether the Model 888 was being used in a reasonably anticipated manner?

(3)     Should summary judgment in favor of Plaintiffs'/Intervenors' failure to warn claims be denied because a genuine issue of material fact exists [] as to whether Manitowoc's dissemination of SB90 to its distributors was adequate under the circumstances;

(4)     Should summary judgment in favor of Plaintiffs'/Intervenors' failure to warn claims be denied because Plaintiffs/Intervenors have not shown an alternative warning that would have been heeded and prevented the accident; and

(5)     Did the trial court err in granting summary judgment on Manitowoc's comparative fault defense as related to prior distributors and dealers because issues of fact exist regarding the culpability of those entities for failing to properly maintain the Model 888 and/or for failing to notify the owner of the Model 888 of SB90?

4

## II.

## FACTS AND PROCEDURAL HISTORY

At the time of the accident, Plaintiffs were employed as riggers for BWW. BWW and Morris Material, Inc., entered into a contract for BWW to fabricate and assemble a port gantry crane, which is a large tower crane with a steel support tower and a horizontal boom that holds the operator's cab and the crane's operating mechanism. Port gantry cranes are generally used to offload cargo from vessels.

Although the port gantry crane was to be sold to the Port of Lake Charles, its fabrication and construction began in 2010 at BWW's facility in New Iberia, Louisiana. BWW fabricated the crane in two sections: (1) the main body tower section and (2) the boom section, which BWW planned to construct on the ground. To lift the boom and attach it to the tower section, BWW utilized the model 888 crane at issue in this case, which was manufactured by Manitowoc in 1998 and was purchased by the Bayou Companies in 2008. At the time of the accident, BWW was leasing the crane from the Bayou Companies.

On May 26, 2011, Plaintiffs were standing on the lifted boom, attempting to fasten the boom section to the tower section, when the crane allegedly malfunctioned, causing the boom to crash into the tower. As a result, Plaintiffs fell to the ground and sustained serious personal injuries. BWW also sustained property damage. Allianz, which provided builders' risk insurance coverage for BWW, paid for BWW's property damage.

Plaintiffs each filed separate product liability lawsuits against Manitowoc, alleging that the crane was unreasonably dangerous because of an inadequate warning, defective design, and/or defect in construction or composition

under the LPLA. BWW and Allianz intervened in the lawsuits. The trial court subsequently consolidated the two suits.

In their amended petitions, Plaintiffs/Intervenors contended that the accident was a result of a defect relating to six bearing retainer cap screws that secured the brake and clutch assembly to the crane's hoist drum. Plaintiffs/Intervenors alleged that the cap screws had loosened, causing the drum to disengage from the crane shaft and fall, a defect Manitowoc had advised its distributors of in 2002 through the issuance of its Service Bulletin 90. A post-accident investigation of the crane revealed the six cap screws had backed out, but Manitowoc contended that the malfunction was due to neglect and poor maintenance of the crane by various distributers and previous owners as well as the unsafe and overloaded use by BWW.

In its answer and amended answers, Manitowoc raised affirmative defenses of comparative fault against several third-parties, including the Coast Crane Company (Coast Crane) (the original distributor),[3] T&T Truck & Crane Service (the original purchaser in 1998), and Northern Crane Services, which possessed the crane from 2003-2008. Manitowoc contended that Coast Crane could bear some comparative fault because it was the original distributor and the crane was in Coast Crane's distributorship territory at the time Service Bulletin 90 was issued. Moreover, Manitowoc discussed with Coast Crane the inspection procedure required in that service bulletin while Coast Crane was working on the crane and viewing the drum clutch assembly that Plaintiffs/Intervenors claim was defective; thus, Manitowoc posited that Coast Crane's failure to make the corrections recommended

---

[3]Coast Crane has since been dissolved through bankruptcy proceedings.

6

by Service Bulletin 90 could cast it at fault. As to T&T Truck & Crane Service and Northern Crane Services, Manitowoc asserted they could be liable for the long-term failure of maintenance and inspection of the crane, which Manitowoc argued was a critical cause of the load drop.

Manitowoc moved for summary judgment, seeking to have Plaintiffs'/Intervenors' claims against it dismissed on the grounds that the crane was not being used in a reasonably anticipated manner at the time of Plaintiffs' accident or, alternatively, that Plaintiffs/Intervenors did not prove the existence of a defect in the crane that caused their damages. It also filed a Motion for Dismissal of Certain Claims and Causes of Action and for Spoliation Presumption. By that motion, Manitowoc sought to have Plaintiffs/Intervenors sanctioned for destroying, losing, or intentionally refusing to produce critical evidence that would have been essential to Manitowoc's defense, *i.e.*, the drum adapter. Manitowoc asserted that due to spoliation of evidence, certain claims by Plaintiffs/Intervenors should be dismissed and/or the jury should be instructed to apply an adverse presumption that if the missing evidence had been produced, it would have been in Manitowoc's favor.

Plaintiffs/Intervenors also sought partial summary judgment on the issue of whether Manitowoc was the manufacturer of the crane and whether Manitowoc, as the manufacturer, failed to warn of a defect in the crane as required by the LPLA. They argued that Manitowoc's failure to send Service Bulletin 90 to the owners of the crane breached its duty to warn under the LPLA, rendering the crane unreasonably dangerous. Plaintiffs/Intervenors also sought judgment dismissing Manitowoc's affirmative defenses against its distributors and previous owners of the crane, arguing that Manitowoc could not delegate its duty to warn.

Following a hearing, the trial court denied Manitowoc's motion for summary judgment. In its written reasons, the trial court found the following genuine issues of material fact existed: (1) "whether the crane was being used in a reasonably anticipated manner at the time of the incident"; (2) whether there was an unreasonably dangerous condition in the construction or composition of the crane that proximately caused Plaintiffs'/Intervenors' damages; (3) whether there was an unreasonably dangerous condition in the design of the crane that proximately caused Plaintiffs'/Intervenors' damages; and (4) whether "Manitowoc failed to provide an adequate warning, and this failure caused [Plaintiffs'/Intervenors'] damages."

In a separate judgment, the trial court denied Manitowoc's motion pertaining to spoliation evidence. The trial court also granted Plaintiffs'/Intervenors' motion for partial summary judgment, finding that Manitowoc was the manufacturer of the crane and that Manitowoc had breached its non-delegable duty to warn of defects in the crane. Finding that the various distributors and owners of the crane did not owe a duty to warn, the trial court dismissed Manitowoc's affirmative defenses as to those parties. The trial court designated both judgments immediately appealable under La.Code Civ.P. art. 1915(B).

Manitowoc then filed two separate writ applications with this court, seeking review of the ruling whereby the trial court denied its motion for summary judgment as well as review of the trial court's denial of Manitowoc's motion for spoliation sanctions. This court signed an order consolidating the two writ applications. Manitowoc also filed two separate appeals from the trial court's judgment granting Plaintiffs'/Intervenors' motion for partial summary judgment on their failure to warn claim. In the interest of judicial efficiency and economy, this

court granted Manitowoc's motion to consolidate its writ applications with the appeals. All these matters are now before this court.

### III.

### STANDARD OF REVIEW

An appellate court reviews a motion for summary judgment de novo, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. Therefore, just like the trial court, we are tasked with determining whether "the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

A genuine issue of material fact exists "if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue." *Smith v. Our Lady of the Lake Hosp., Inc.,* 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 481 (1983)). In determining whether a material factual dispute exists, a court should consider all of the record evidence but must refrain from determining the merits, making credibility determinations, and evaluating testimony. *Id*. All doubts are resolved in favor of the non-moving party. *Id*.

### IV.

### LAW AND DISCUSSION

At the center of these product liability actions is the LPLA, which provides "the exclusive theories of liability for manufacturers for damage caused by

9

their products." La.R.S. 9:2800.52. To successfully bring a products liability action under the LPLA, a plaintiff must establish four elements: (1) the defendant is a manufacturer of the product; (2) the claimant's damage was "proximately caused by a characteristic of the product"; (3) this characteristic "renders the product unreasonably dangerous"; and (4) the claimant's "damage arose from a reasonably anticipated use of the product by the claimant" or someone else. La.R.S. 9:2800.54(A). Under the LPLA,

> A product is unreasonably dangerous if and only if:
>
> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

La.R.S. 9:2800.54(B).

While the characteristic that renders the product unreasonably dangerous in construction/composition or in design must exist when the product leaves the manufacturer's custody, the characteristic that renders the product unreasonably dangerous for failure to adequately warn or conform to a warranty "must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product." La.R.S. 9:2800.54(C). The burden is on the claimant to prove these elements. La.R.S. 9:2800.54(D).

10

In their motions for summary judgment, the parties herein argue that each is entitled to judgment as a matter of law on certain elements of the claims. Manitowoc argues that it is entitled to judgment on the elements of (1) reasonably anticipated use; (2) unreasonably dangerous in construction or composition; (3) unreasonably dangerous due to an inadequate warning; and (4) unreasonably dangerous in design. Plaintiffs/Intervenors, on the other hand, argue they are entitled to judgment on the element of unreasonably dangerous due to an inadequate warning.

To succeed on their motions, the parties have to prove there is no genuine issue of material fact as to these elements, meaning that, even viewing the evidence in the light most favorable to the non-moving party, no reasonable factfinder could find for the non-moving party. *Smith*, 639 So.2d 730. Having reviewed the record, we cannot say that any of the parties have demonstrated a lack of evidence as to each of these elements such that no reasonable factfinder could find in favor of the non-moving parties. We turn now to a discussion of each element and the record evidence pertaining thereto.

### *Reasonably Anticipated Use*

"Under the LPLA, a manufacturer is liable only for those uses it should reasonably expect of an ordinary consumer." *Butz v. Lynch*, 99-1070, p. 7 (La.App. 1 Cir. 6/23/00), 762 So.2d 1214, 1218, *writ denied*, 00-2660 (La. 11/17/00), 774 So.2d 980. "Reasonably anticipated use" is defined under the LPLA as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La.R.S. 9:2800.53(7). "The standard for determining a reasonably anticipated use is an objective one (an

11

ordinary person in the same or similar circumstances)." *Butz*, 762 So.2d at 1218. And "what constitutes a reasonably anticipated use is ascertained from the point of view of the manufacturer at the time of manufacture," thus precluding "the fact-finder from using hindsight." *Payne v. Gardner*, 10-2627, p. 3 (La. 2/18/11), 56 So.3d 229, 231.

In its motion for summary judgment, Manitowoc asserts that Plaintiffs' claims should be dismissed because the manner in which they were using the crane at the time of the incident, *i.e.*, riding a "suspended load," was not a reasonably anticipated use. The record evidence establishes that a suspended load is a free-floating object that is held aloft by a crane. According to Manitowoc's evidence, the riding of a suspended load without fall protection was a violation of the Occupational Safety and Health Administration (OSHA) standards, BWW's operating procedures, the crane's Operator's Manual, and accepted industry practice in the crane industry. Such a use, Manitowoc maintains, was obviously dangerous and was well known by BWW's employees as a violation of OSHA standards.

Plaintiffs, however, presented evidence that the boom was no longer classified as a "suspended load" because the boom was pinned and connected to a super structure, *i.e.*, the tower. Although Manitowoc disregards this evidence as "seemingly contrived" and based on regulations applicable to ironworkers, we find this evidence presented by Plaintiffs' expert, William Clifford Dickinson, precludes summary judgment on this issue.

Manitowoc also argues that the manner in which BWW used the crane was not a reasonably anticipated use because the crane was overloaded and poorly maintained as per the testimony of its experts in the crane industry, Bradley D. Closson and Michael Parnell. But again, Plaintiffs/Intervenors presented factual

evidence, through the testimony of the crane operator, Christopher S. Alleman, disputing whether the crane was overloaded at the time of the accident. They further submitted evidence of the crane's annual inspections, which were required by OSHA and performed by independent OSHA-certified inspectors, as well as testimony that the crane was regularly inspected by BWW and the Bayou Companies' crane operators, none of which inspections revealed poor maintenance. This evidence as well raises genuine issues of material fact which likewise precludes summary judgment on this element.

***Unreasonably Dangerous***

As stated above, a product may be deemed unreasonably dangerous in any one of four ways: (1) in construction or composition; (2) in design; (3) for failure to provide an adequate warning; or (4) for failure to conform to an express manufacturer's warranty. La.R.S. 9:2800.54(B). Each is a distinct possible theory of recovery governed by a separate statute as set forth in La.R.S. 9:2800.54(B).

While Manitowoc argues that Plaintiffs/Intervenors lack sufficient evidence to prove that the crane was unreasonably dangerous in construction, warning, and design, Plaintiffs/Intervenors argue that there is no genuine issue of material fact that Manitowoc failed to warn the crane owners of a defect with the cap screws, rendering the crane unreasonably dangerous under their theory of failure to warn. However, we find there are genuine issues of material fact regarding whether the product was unreasonably dangerous with respect to all three theories.

### 1. Construction or Composition

Pursuant to La.R.S. 9:2800.55, "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's

13

control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." "[W]hether a defect is unreasonably dangerous in . . . composition is a question of fact." *Morris v. United Servs. Auto. Ass'n*, 32,528, p. 8 (La.App. 2 Cir. 2/18/00), 756 So.2d 549, 557.

Manitowoc argues that Plaintiffs/Intervenors lack sufficient evidence upon which they could demonstrate an unreasonably dangerous condition in construction or composition in existence when the crane left Manitowoc's custody and control. However, Plaintiffs/Intervenors argue that, according to the deposition testimony of Michael Brunet, Manitowoc's former Director of Product Safety, Manitowoc's plans and specifications called for Loctite 242 to be "applied" to all six cap screws. Plaintiffs/Intervenors claim that a microscopic examination of the screws after the accident apparently revealed no Loctite on the threads. Rather, the Loctite 242 had collected at the top and bottom of five screws; the sixth screw was completely devoid of Loctite. According to Plaintiffs'/Intervenors' expert, Dr. Thomas C. Shelton, P.E.,[4] the unintended load drop was proximately caused by the fact that Loctite coverage for the cap screws deviated in a material way from Manitowoc's specifications.

Given the lack of evidence in the crane history file, produced by Manitowoc in discovery, that the cap screws were ever replaced, Plaintiffs/Intervenors argue that there is ample evidence that the cap screws were the original cap screws that Manitowoc installed; therefore, there is ample evidence that the crane was unreasonably dangerous in construction or composition when it left

---

[4]The two-letter title, P.E., stands for licensed professional engineer.

Manitowoc's control. We find this evidence is sufficient to raise a genuine issue of material fact as to this theory.

## 2. Failure to Warn

In a failure to warn case, a product is considered unreasonably dangerous if the claimant can prove that "at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La.R.S. 9:2800.57(A). The LPLA defines "[a]dequate warning" as:

> a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the danger for which the claim is made.

La.R.S. 9:2800.53(9). Moreover, the LPLA imposes a continuing duty on the manufacturer to warn the users and handlers of its product of defects the manufacturer learns of after the product leaves its custody:

> A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La.R.S. 9:2800.57(C).

At issue in the present case is Manitowoc's continuing duty to warn of a defect that it discovered in its model 888 cranes after the subject crane left its control in 1998—a defect that was documented in Service Bulletin 90. As explained

15

in Mr. Brunet's deposition, Manitowoc investigated another model 888 crane located in Colorado that suffered a similar malfunction, an unintended load drop, on July 25, 2002. In its investigation, Manitowoc learned that the cap screws could loosen and cause damage to the clutch assembly which could, in turn, result in load drops when the crane was operating in freefall mode. Thereafter, Mr. Brunet immediately drafted Service Bulletin 90 to warn its distributors. As Mr. Brunet explained, service bulletins were the method that Manitowoc used to communicate service issues involving its cranes.

Service Bulletin 90 advised distributors that loose cap screws could cause damage to the clutch assembly and requested that all model 888 cranes equipped with freefall be inspected by a Manitowoc qualified service technician. If any crane was found to have loose cap screws, the screws should have been removed, applied with Loctite 242, and re-tightened to fifty-three foot-pounds. Attached to the bulletin was an inspection form that was to be completed by the distributor and returned to Manitowoc within thirty days from the date the bulletin was issued. The inspection report would then be placed in the crane history file, a service and ownership history file that Manitowoc maintained for all the cranes that it sold.

At the time that Service Bulletin 90 was issued, Manitowoc identified forty-two cranes that were manufactured with freefall installed by Manitowoc. Manitowoc sent Service Bulletin 90 to its distributors via facsimile in October 2002. Thereafter, Manitowoc relied upon its distributors to identify the model 888 cranes that the distributors had sold and to contact the owners of those cranes to both warn the owners and to inspect and, if need be, perform the recommended repair.

It is undisputed that the crane at issue was subject to Service Bulletin 90 and that the service bulletin was not sent to the owners. What is disputed is

whether Manitowoc breached its duty to warn by issuing its bulletin to its distributors, not the owners. Plaintiffs/Intervenors moved for summary judgment on this issue, and the trial court granted their motion, finding the warning was not sufficient because it was not sent to the owners. Manitowoc also sought summary judgment, arguing that Plaintiffs/Intervenors failed to show anything related to Service Bulletin 90 caused the load drop and resulting damages that were sustained in this case. Regardless, Manitowoc argued that Plaintiffs/Intervenors failed to present an alternative warning and means of ensuring compliance with any such warning that would have avoided the incident at issue in this case. Once again, we find that the factual disputes in this matter preclude summary judgment on this theory of recovery.

"Whether a particular warning or instruction is adequate is a question for the trier of fact." *Jack v. Alberto-Culver USA, Inc.*, 06-1883, p. 5 (La. 2/22/07), 949 So.2d 1256, 1259. Several factors come into play in determining the adequacy of the warning, namely: (1) "the severity of the danger," (2) the likelihood of successful communication of the warning to foreseeable consumers, (3) "the intensity and form of the warning," and (4) "the cost of improving the strength or mode of the warning." *Bloxom v. Bloxom*, 512 So.2d 839, 844 (La.1987). It stands to reason that this fact-intensive inquiry is both case-specific and industry-specific as the duty itself is one of "a reasonably prudent manufacturer." *See* La.R.S. 9:5800.57(C).

In granting summary judgment, the trial court relied upon this court's holding in *Marks v. OHMEDA, Inc.*, 03-1446, p. 9 (La.App. 3 Cir. 3/31/04), 871 So.2d 1148, 1155, *writs denied*, 04-1617, 04-1653 (La. 10/8/04), 883 So.2d 1019, 1020, that "the duty established by La.R.S. 9:2800.57(C) is a duty placed directly

17

upon the manufacturer. It cannot be delegated." *Marks*, however, is clearly distinguishable from the instant case, particularly in that the factfinder reached its conclusion as to the insufficiency of the warning after a six-day bench trial on the merits. This matter is before the court on summary judgment.

Moreover, the manufacturer in *Marks* published its warning in a trade publication—a medical journal—but took no direct action to notify its users. The record evidence in the present matter establishes that Manitowoc issued its warning to its distributors, relying, as was its historical practice, on its distributors to not only inform their buyers/owners, but also to inspect and repair the potential defect. Whether that procedure was reasonable and sufficient in this circumstance under the inquiry recited above is a question of fact that we find must be determined by the factfinder and cannot be resolved on summary judgment.

Nevertheless, because the factfinder could reasonably determine, as the trial court herein did, that Manitowoc breached its duty by failing to send any notice/warning directly to the owners, we further find no merit at this time in Manitowoc's argument on Plaintiffs'/Intervenors' failure to establish an alternative warning. Finally, we note that Plaintiffs/Intervenors, through their experts' opinions, have produced sufficient evidence for a reasonable factfinder to conclude that the alleged defect for which Manitowoc may have had a duty to warn—the cap screw assembly—could have caused the injuries and damages in this matter.

Therefore, none of the parties are entitled to summary judgment on this theory of recovery. Moreover, as a genuine issue of material fact exists on the adequacy of Manitowoc's warning procedure under these circumstances, Plaintiffs/Intervenors are not entitled at this time to judgment on Manitowoc's affirmative defenses as to its distributors as well as the crane's previous owners.

### 3.  Design

Louisiana Revised Statutes 9:2800.56 defines a product that is unreasonably dangerous in design as follows:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

As with the previous theories, the question of whether a product is unreasonably dangerous in design is a question of fact. *Morris*, 756 So.2d 549.

Manitowoc argues it is entitled to summary judgment on this theory as well because Plaintiffs/Intervenors have failed to show a feasible alternative design that could have prevented the incident.  However, through the reports and depositions of their experts, namely Dr. Shelton, Russ Rasnic, P.E., and G. Fred Liebkemann IV, P.E., Plaintiffs/Intervenors have put forth evidence of four alternative designs, which their experts opine would have substantially reduced the chances of their injuries and damages.  We find this evidence is also sufficient to raise a genuine question of material fact and withstand summary judgment as to this theory.

In light of all the genuine issues of material fact that exist on this record, we find summary judgment is not appropriate at this time.  Accordingly, we reverse

the trial court's judgment granting partial summary judgment on Manitowoc's failure to warn and its affirmative defenses. On the showing made, we further find no abuse of discretion in the trial court's refusal to strike Plaintiffs'/Intervenors' Exhibits 6, 9, 10, 14, 16, 23, 31, 34, and 37.[5] Therefore, we likewise deny Manitowoc's writ application in docket number CW 16-897 in its entirety.

### Spoliation Sanctions

The sole remaining issue before this court is Manitowoc's motion for spoliation sanctions. As our brethren in the first circuit recently explained:

> Spoliation of the evidence is an *evidentiary* doctrine that refers to an intentional destruction of evidence for the purpose of depriving the opposing parties of its use in pending or anticipated litigation. . . .
>
> A trial court has the authority to impose sanctions on a party for spoliation of evidence and other discovery misconduct under both its inherent power to manage its own affairs and the discovery articles provided in the Louisiana Code of Civil Procedure. Under La. C.C.P. art. 1471, when a party refuses or is unable to comply with a discovery order, the trial court in a pending action "may make such orders in regard to the failure as are just," thereby granting the trial court broad discretion to impose a range of sanctions. La. C.C.P. art. 1471(A); *see also* Fed.R.Civ.P. 37. Even without a discovery order, La. C.C.P. art. 191 authorizes trial courts to impose sanctions for spoliation of the evidence, since the destruction of evidence clearly interferes with the court's ability to fairly administer justice. Specifically, La. C.C.P. art. 191 provides that a trial court "possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law."

---

[5]In its application, Manitowoc merely lists the exhibits after first stating that it objected to them because they did not conform to the requirements of La.Code Civ.P. art. 966(A)(4). Without argument, Manitowoc then simply concludes: "The trial court erred in failing to strike these documents." The exhibits are as follows: (1) Exhibit 6 – OSHA inspection tags; (2) Exhibit 9 – May 26, 2011 JSA; (3) Exhibit 10 – Manitowoc Load Capacity Chart; (4) Exhibit 14 – Rocky Mountain Investigative File; (5) Exhibit 16 – List of Model 888's with freefall; (6) Exhibit 23 – Toby Dugas Diagram; (7) Exhibit 31 – 21722 OSHA certificate; (8) Exhibit 34 – Crane History File; and (9) Exhibit 37 – Freefall drawing showing Loctite specifications.

. . . .

> The range of possible sanctions include dismissing a case, rendering a default judgment, striking pleadings, striking a claim or defense, and excluding evidence. *See* La. C.C.P. art. 1471; *Spoliation of Evidence* at 61 & n. 5. A determination as to what sanction is appropriate in a particular case is a matter within the province of the trial court, depending upon the facts present. As with other evidentiary and discovery rulings, the trial court has much discretion in deciding which sanction, if any, to impose. *Cf. Hutchinson v. Westport Insurance Corporation*, 04-1592 (La.11/8/04), 886 So.2d 438, 440 (per curiam); *also see Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir.2009). The appellate standard of review for a trial court's evidentiary ruling on this issue is whether the trial court abused its broad discretion. *See BancorpSouth Bank*, 13-1396 at p. 22, 155 So.3d at 641; *Paradise v. Al Copeland Investments, Inc.*, 09-0315 (La.App. 1st Cir. 9/14/09), 22 So.3d 1018; *Everhardt v. Louisiana Department of Transportation and Development*, 07-0981 (La.App. 4th Cir. 2/20/08), 978 So.2d 1036, 1045.

*Carter v. Hi Nabor Super Market, LLC*, 13-529, pp. 6-9 (La.App. 1 Cir. 12/30/14), 168 So.3d 698, 703-705, *writ denied*, 15-190 (La. 4/17/15), 168 So.3d 399 (emphasis in original).

Manitowoc argues that all of the elements necessary for dismissal of certain causes of action and a claim for an adverse inference are present here because Plaintiffs/Intervenors have destroyed, lost, or intentionally refused to produce evidence within their control without an adequate explanation. The evidence to which Manitowoc refers is the drum adapter, which Manitowoc emphasizes was "the very component part of the crane to which the retaining screws were mated" and "could very well be the Rosetta Stone of this matter."

However, Manitowoc has presented no evidence that Plaintiffs'/Intervenors' employees or representatives **intentionally** discarded or destroyed the drum adaptor. Rather, the evidence suggests that the drum adapter

21

was one of the many items that were stolen out of the Bayou Companies' warehouse on or about February 28, 2014. The evidence further shows that a former employee of the Bayou Companies pled guilty to the theft. In light of this evidence, we find no abuse of discretion in the trial court's denial of Manitowoc's motion for spoliation sanctions as Manitowoc has not established that Plaintiffs/Intervenors intentionally destroyed the drum adaptor, which Manitowoc even concedes it inspected, at least visually, on a previous occasion. Therefore, we likewise deny Manitowoc's writ in docket number CW 16-898, finding no abuse of the trial court's broad discretion.

V.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court granting partial summary judgment in favor of Plaintiffs/Intervenors is reversed. Writs are denied.

Costs of this appeal are assessed equally to Defendant/Appellant and Plaintiffs/Intervenors/Appellees.

**REVERSED; WRITS DENIED.**