894 So.2d 366 (2005)
Paula M. GARRETT
v.
BOH BROTHERS CONSTRUCTION COMPANY, LLC and John Doe.
No. 04-CA-804.
Court of Appeal of Louisiana, Fifth Circuit.
January 11, 2005.
*368 Charles N. Branton, Slidell, LA, for Plaintiff/Appellee.
Charles C. Foti, Attorney General, John D. Ray, Assistant Attorney General, Louisiana Department of Justice, Baton Rouge, LA, for Intervenor/Appellee.
Barbara G. Haynie, Michael R.C. Riess, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
*367 WALTER J. ROTHSCHILD, Judge.
Boh Brothers Construction Co. ("Boh Bros.") appeals from a judgment rendered in favor of plaintiff, Paula M. Garrett. For the reasons that follow, we affirm.
Paula M. Garrett, an employee of the State of Louisiana, filed a petition for damages against Boh Bros. for injuries sustained when she fell at a construction site. The petition alleged that on May 28, 2000 plaintiff was working as an inspector for the State Department of Transportation and Department, (DOTD) which had contracted with Boh Bros. to provide asphalt and repair services on I-10 in Jefferson Parish. Plaintiff alleged that as she was preparing to inspect a piece of asphalt that had been laid by Boh Bros., a Boh Bros. employee picked up a string line, causing her to trip and fall into the hot asphalt. Plaintiff alleged that as a result of the negligence of Boh Bros., she sustained severe burns to several parts of her body.
Boh Bros. answered the petition and alleged that the accident occurred due to the fault of plaintiff. The State of Louisiana intervened in the matter to recover the medical expenses they paid to plaintiff as a result of this injury.
Plaintiff stipulated that her claim did not exceed an amount of $50,000.00, and the matter proceeded to a bench trial. The trial court rendered judgment in favor of plaintiff and against Boh Bros. in the amount of $40,250.00. The trial court also awarded the State the amount of the medical expenses paid, $9,717.87. Boh Bros. now appeals from this judgment on the basis of two assignments of error.

Comparative Fault
Appellant first contends that the trial court erred in failing to find comparative fault on behalf of plaintiff.
*369 The court of appeal may not set aside the trial court's findings of fact, in the absence of manifest error or unless the findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Furthermore, "where two permissible views of the evidence exists, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart v. State, 617 So.2d 880, 882-883 (La.1993). However, a proper review of the record cannot be completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court. There must be a further determination that the factfinder's conclusion is reasonable in light of the entire record. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 220. The manifest error standard of review applies as well to the trial court's apportionment of percentages. Walker v. McCartney, 96-706 (La.App. 5th Cir.9/17/97), 700 So.2d 898, 903.
The record in this case contains the following testimony on the issue of comparative fault:
Dwight Mickell testified at trial that he worked for Boh Bros. in the asphalt department, and he was working on the I-10 job on May 28, 2000. At the time of Paula Garrett's fall, Mr. Mickell stated that he was holding the string line under his foot on the asphalt in order to make a straight cut of the road's edge. Mr. Mickell stated that when Ms. Garrett fell, he felt the line move and "it felt like she tripped over the line." Mr. Mickell also stated that the asphalt had not been rolled at the time Ms. Garrett fell.
Joseph Scaffidi testified that he was the general superintendent for the asphalt department at Boh Bros. Mr. Scaffidi stated that he was present at the overlaying of the I-10 asphalt on May 28, 2000 when Ms. Garrett's accident occurred. He stated that he was holding one end of a string line and Dwight Mickell was holding the other end in an effort to get a straight line to make a cut in the asphalt. He stated he picked up the line and moved it to make it straight, and he "felt a tug on the line." He stopped and looked up and saw Ms. Garrett falling. Mr. Scaffidi testified that he did not see Ms. Garrett walk out onto the asphalt. He also stated that two of the lanes had been rolled several times, but the lane they were preparing to cut had not yet been rolled.
Jeff Bentley, Ms. Garrett's supervisor at DOTD, testified that it would be considered a poor construction habit for state crew members to step onto freshly laid asphalt before it has been rolled. He further stated that he was not present at the site at the time of the accident, and he also stated that Ms. Garrett was not reprimanded for her actions at the time of the accident.
Curtis Williams testified that he was also an inspector for DOTD and he was working with Paula Garrett on the date of the accident. He stated that while he waited in the state vehicle at the site, he witnessed Ms. Garrett walk across the asphalt to speak to one of the Boh Bros. employees about the asphalt. He stated that all three of the lanes that she crossed had already been rolled, and he agreed that an inspector should not walk across loose asphalt. He stated that as Ms. Garrett walked back to the car, the string line the Boh Bros. employees were using was raised and it caught Ms. Garrett's leg between her ankle and her knee, causing her to fall in the hot asphalt. He stated he was never told by anyone from Boh Bros. that Ms. Garrett was walking across unrolled asphalt. He stated that there were no indentions from Ms. Garrett's footprints in the asphalt, indicating that it had been *370 previously rolled. Mr. Williams stated the asphalt remained hot for hours after it was laid.
Paula Garrett testified that she worked as an inspector for approximately five years before this accident. She stated that on May 28, 2000, she and her co-worker were seated in their vehicle on the I-10 inspecting the Boh Bros. work of overlaying asphalt on the interstate. Ms.Garrett stated that she noticed that the Boh Bros. employees were preparing to cut asphalt that had already been rolled, and she got out of the vehicle to ask about this procedure. She said she walked across several lanes of the interstate to reach Joseph Scaffidi, the Boh Bros. employee she wanted to speak to, and she stated that all of these lanes had been rolled at this point. She stated that if the lanes had not been rolled, her foot would have left an impression, and Boh Bros. employees would have complained to her about this.
Ms. Garrett stated that she noticed the string line on the ground near the spot were Mr. Scaffidi was standing, and she spoke to Mr. Scaffidi for about ten minutes. She turned to walk back to her vehicle and checked to be sure the string was still on the ground. She stated that she then felt the string on her leg, and she fell into the hot asphalt.
On cross-examination, Ms. Garrett stated that Boh Bros. had finished laying asphalt in three lanes of the interstate and were preparing to lay asphalt in the fourth lane. She stated that all three of these lanes had been rolled one time, and that she would not walk in unrolled asphalt. She stated that she normally would not walk across asphalt that had been rolled only once, but there was no other way to reach Mr. Scaffidi to complete her inspection.
Finally, the record contains the testimony of Glenn Eisenhorn, the Boh Bros. foreman for the I-10 project, who stated that he did not witness Ms. Garrett's accident, but he brought Ms. Garrett to the hospital. Mr. Eisenhorn testified that it would be a breach of the company's safety policies for employees to lift the string line without looking if other people are walking in the area. Mr. Eisenhorn also stated that at the time of Ms. Garrett's accident, Boh Bros. was preparing to make a cut in the asphalt, which they normally do before the area is rolled. He stated that the area where Ms. Garrett fell was unrolled.
In its reasons for judgment, the trial court stated with regard to the cause of this accident:
In light of the testimony and evidence presented, this Court finds that the plaintiff fell as a result of being tripped by the stringline when it was inadvertently raised by one of the employees of Boh Brothers Construction and her injuries resulted therefrom. This Court further finds that the plaintiff did in no way contribute to causing her accident and is therefore found to be without fault.
Our review of the entire record in this case reasonably supports the factual findings of the trial court. Although Ms. Garrett testified she is experienced in construction sites, she further stated that she looked before crossing the asphalt and saw the string line flat on the ground. She stated that the string line was raised suddenly and without warning. The testimony of Boh Bros. employee Joseph Scaffidi indicates that the line was picked up and moved at the approximate time of Ms. Garrett's fall. Both of the men who were holding the line stated that they felt a pull or a tug on the line, although they did not see Ms. Garrett walking across the asphalt. Thus, the record supports the trial court's factual determination that Ms. Garrett *371 tripped on the string line that had been inadvertently lifted by Boh Bros. employees. Further, there was testimony in the record that it is a breach of Boh Bros. safety procedures to lift a line without looking when other persons are in the area.
Although there was conflicting testimony as to whether the section of the interstate that Ms. Garrett walked on had been sufficiently rolled to be suitable for walking on, the trial court evidently made a factual determination that the area had been rolled at least once and that it was not an uncompacted area. Ms. Garrett admitted that it is bad construction practice to walk across an area that had been rolled only once, she stated it was the only way to complete her inspection and to reach the area where the Boh Bros. employees were preparing to cut the asphalt.
Under the circumstances presented by this case, we fail to find manifest error in the trial court's determination that plaintiff did not contribute to her accident. Although there may be two permissible views of the evidence in this case, we cannot say that the trial court's factual determinations are clearly wrong in light of the entire record. Our review of the entire record indicates a reasonable factual basis for the trial court's findings. The assignment of error is without merit.

Damage Award
Appellant also contends that the trial court abused its discretion in awarding general damages to plaintiff in the amount of $40,250.00. Appellant contends that this amount is excessive for plaintiff's injury, which entailed burns that did not require skin grafting and for which she was treated for a period of seventeen months.
Plaintiff's medical records indicate that she was seen in the emergency room on the date of the accident where her burns were cleaned and treated. Her left palm had a baseball-sized blister, and asphalt was embedded in her skin. She was given strong pain medication and she was released the same day.
Two days later, plaintiff saw her family practice physician, Dr. Rory Duffour, on May 20, 2000. At this time, plaintiff complained of pain resulting from second and third degree burns to her hand, forearm and leg. Dr. Duffour gave plaintiff a tetanus shot, and prescribed antibiotics and pain medication. He recommended daily physical therapy, which included whirlpool baths and dressing changes. Dr. Duffour stated that plaintiff suffered a loss of sensation and nerve damage in her body as a result of the burns. He diagnosed her with second and third degree burns of approximately five percent of her body surface area.
Plaintiff underwent daily physical therapy and wound care through July 14, 2000. She continued to see Dr. Duffour and complained of a tingling sensation in her hand. She also experienced hyperpigmentation, or a darkening of the skin, as a result of the burns. Plaintiff saw Dr. Duffour through June 7, 2001, when she continued to complain of pain and problems with her left palm. Plaintiff returned to work in July of 2000.
Dr. Duffour referred plaintiff to a neurologist, Dr. Michael Becker, in October of 2001. Dr. Becker noticed scarring of plaintiff's left palm and discoloration along the right forearm and right lower leg. He also found that plaintiff had diminished sensation in her left hand and in the areas of discoloration. Dr. Becker recommended diagnostic testing including a nerve conduction study and an EMG. The results of the testing indicated that plaintiff sustained nerve damage in her left arm and palm area as a result of the May 28, *372 2000 accident. Dr. Becker stated that second and third degree burns are painful, and he found evidence of permanent nerve damage in plaintiff's left arm.
Plaintiff also saw a hand surgeon, Dr. Eric George, in December of 2000. Dr. George found that plaintiff suffered from carpal tunnel syndrome, which was unrelated to her accident. Dr. George also opined that plaintiff's burns were not as severe as indicated by the other physicians, as they healed without the necessity of skin grafting.
Plaintiff testified that she still experiences pain and numbness in her hand and has been limited in many activities. In fact, she testified that she has no pain-free days, and she was still in pain at the trial in December of 2003. She cannot open jars nor do things with her left hand, although she is left-handed. She testified her hand hurts when the weather changes. She also has some permanent scarring and skin cracking, which the trial court was able to observe.
An award for damages must be reviewed in a light most favorable to the party who prevailed at trial. Harvey v. State, Dept. of Transportation and Development, 00-1877, (La.App. 4 Cir. 9/26/01), 799 So.2d 569, 576, writ denied, 02-0003 (La.3/15/02), 811 So.2d 910. An appellate court may not overturn an award for damages unless it is so out of proportion to the injury complained of that it shocks the conscience. Id., 799 So.2d at 577. In fact, the fact-finder has vast discretion in determining a general damages award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Id. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point that is reasonably within that discretion. Id.
The trier of fact is accorded vast discretion in fixing general damage awards, such that an appellate court should rarely disturb an award of general damages. Duncan v. Kansas City Southern Railway Co., 00-66 (La.11/3/00), 773 So.2d 670, 682. The appellate court's role in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id.; Johnson ex rel. Johnson v. Dumas, 01-1153, (La.App. 5 Cir. 2/26/02), 811 So.2d 1085; writ denied, 02-955 (La.5/31/02), 817 So.2d 101.
Applying these principles to the record, we find no abuse of discretion by the trial court and no basis on which to disturb the award of general damages. The trial court made a factual finding that plaintiff suffered from second and third degree burns, and this finding is supported by the record. Although there was conflicting testimony concerning the extent of plaintiff's injury, the trial court was in the best position to assess the credibility of the witnesses. The trial court apparently chose to credit the testimony of plaintiff and Dr. Becker regarding the extent of plaintiff's injuries and discredited the testimony of Dr. George. This is a credibility determination, which we will not disturb absent a showing of abuse of discretion.
Absent a finding of abuse of discretion, we find it unnecessary to review prior *373 damage awards as suggested by defendant. The general damage award in this case of $40,250.00 is not so out of proportion to the injury sustained that it shocks the conscience, nor do we find it excessive for a woman who sustained severe burns on several parts of her body that resulted in discoloration, scarring and nerve damage. The award for the particular injuries suffered by this particular plaintiff is within the vast discretion afforded the trial court and will not be disturbed.

Conclusion
Accordingly, for the reasons assigned herein, the judgment of the trial court in favor or plaintiff, Paula M. Garrett and the intervenor, the State of Louisiana, and against Boh Bros. is hereby affirmed. Boh Bros. shall bear all costs of this appeal.