DERRICK MILLS, ET AL.

VERSUS

HARLEY-DAVIDSON MOTOR COMPANY,
INC., ET AL.

NO. 24-CA-57

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ST. JAMES, STATE OF LOUISIANA
NO. 38,836, DIVISION "A"
HONORABLE JASON VERDIGETS, JUDGE PRESIDING

February 10, 2025

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Stephen J. Windhorst, and John J. Molaison, Jr.

<u>**AFFIRMED**</u>

> **JJM**
> **SJW**

<u>**CONCURS IN PART, DISSENTS IN PART WITH REASONS**</u>

> **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
DERRICK MILLS
     Anna Q. Skias
     Falcon J. Mire
     Matthew I. Percy
     Jamie I. Schutte
     R. Ryland Percy, III

COUNSEL FOR DEFENDANT/APPELLANT,
HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC
     Carl J. Giffin, Jr.
     Howard B. Kaplan
     Mark A. Kircher
     Sara P. Scullen

**MOLAISON, J.**

Appellant, Harley-Davidson Motor Company Group, LLC ("Harley-Davidson"), appeals a jury's verdict finding it one hundred percent liable for the Plaintiff's motorcycle accident and the 23rd Judicial District Court's judgments denying its Motion for Judgment Notwithstanding the Verdict ("JNOV"). Plaintiffs Derrick and Noi Mills have answered the appeal and are seeking a review of the district court's partial grant of their JNOV related to the jury's awards for damages. We affirm all district court judgments at issue.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

On August 6, 2017, Derek Mills drove his Harley-Davidson FLHXSE CVO Street Glide Motorcycle ("motorcycle") through St. James Parish on Interstate 10 at a speed of approximately 70 miles per hour when it began to "vibrate and wobble violently." He was unable to reduce speed and regain control of the motorcycle before being ejected; he then skidded down the interstate on his stomach. The resulting injuries required a three-week hospital stay to treat the friction burns across his body, including several skin grafts and debridement procedures.

Mr. Mills and his wife, Noi ("The Mills"), filed a lawsuit against Harley-Davidson and other defendants on July 11, 2018, at the 23rd Judicial District Court. When a jury trial commenced on March 21, 2023, Harley-Davidson was the only remaining defendant. After trial, the jury found Harley-Davidson one hundred percent liable for Mr. Mills' injuries and awarded damages for medical expenses: past, present, and future medical expenses, physical pain and suffering; past, present, and future physical pain and suffering, and mental pain and anguish.

Harley-Davidson filed a motion for a JNOV, arguing that the jury's finding that its motorcycle was unreasonably dangerous was against the weight of the evidence. The trial court denied Harley-Davidson's motion on August 17, 2023.

The Mills filed a Motion for a JNOV requesting an increase of the jury's awards for future and past medical expenses, pain and suffering, mental anguish, and loss of enjoyment of life. On August 25, 2023, the trial court partially granted the Mills' JNOV and increased the jury's damage awards for future mental pain and anguish. The court denied the JNOV, in part, for the categories of past and present physical pain and suffering, future pain and suffering, mental pain and anguish, loss of enjoyment of life, and loss of consortium.

The trial court granted Harley-Davidson's motion for appeal on September 15, 2023. After Harley-Davidson filed an appeal with this Court, the Mills filed an answer requesting an increase in the damages awarded.

## HARLEY-DAVIDSON'S ASSIGNMENTS OF ERROR

(1) The trial court abused its discretion in failing to grant Harley Davidson's motion for directed verdict because Plaintiffs unequivocally failed to propose an alternative, adequate warning that would have prevented the alleged injuries. Thereafter, the jury was clearly wrong in finding a warnings defect without the proof required by law.

(2) The trial court abused its discretion in failing to grant Harley-Davidson' s motion for directed verdict because Plaintiffs had no evidence that Mr. Mills would have followed any alternative warning as Mr. Mills testified that he did not remember any of the warnings in the Owner's Manual. Thereafter, the jury was clearly wrong in finding a warnings defect without the proof required by law.

(3) The trial court abused its discretion in allowing Peter Sullivan to testify because his opinions were impermissible *ipse dixit* and the product of rank speculation, making them impermissible under La. C.E. art. 702 and *Daubert.* The introduction of Sullivan's impermissible opinions prejudiced Harley-Davidson and certainly affected the outcome of the case.

(4) The trial court abused its discretion in permitting Mr. Mills to testify regarding how he would have changed the warning in Harley-Davidson's Owner's Manual and how he would have reacted to that hypothetically changed warning. The introduction of this

24-CA-57                                          2

impermissible, self-serving lay opinion testimony prejudiced Harley-Davidson and certainly affected the outcome of the case.

## LAW AND ANALYSIS

*The Burden of Proof under La. R.S. 9:2800.57 and Harley-Davidson's Motion for Directed Verdict*

To maintain a successful product liability action under the Louisiana Products Liability Act ("LPLA"), a plaintiff must establish four elements:

(1) the defendant is a manufacturer of the product;

(2) the claimant's damage was proximately caused by a characteristic of the product;

(3) this characteristic made the product "unreasonably dangerous;" and

(4) the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jack v. Alberto-Culver USA, Inc.*, 06-1883 (La. 2/22/07), 949 So.2d 1256, 1258, *citing* La. R.S. 9:2800.54(A).

A product is unreasonably dangerous when it leaves the manufacturer's control without an adequate warning about the product, the product possesses a characteristic that may cause damage, and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. La. R.S. 9.2800.57(A). Under the LPLA, an "adequate warning" is a warning or instruction that would lead an ordinary reasonable product user or handler to contemplate the danger in using or handling the product; the user has the option to use or handle the product or, if possible, to use it in such a manner as to avoid the danger or avoid using the product. La. R.S. 9:2800.53(9); *Jack*, 949 So.2d at 1258.

A manufacturer of a product who, after the product has left its control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had

it acted as a reasonably prudent manufacturer, is liable for damage caused by the manufacturer's subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. La. R.S. 9.2800.57(A). The manufacturer of a product shall be liable to a claimant for damage proximately caused by a product characteristic that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity. La. R.S. 9.2800.54(A). "Whether a particular warning or instruction is adequate is a question for the trier of fact." *Jack*, *supra* at 1259, *citing Bloxom v. Bloxom*, 512 So.2d 839, 844 (La. 1987), *superseded by statute on other grounds as stated in Payne v. Gardner*, 56 So.3d 229, 231 (La. 2011).

*Motion for a directed verdict*

A party who moves for a directed verdict is entitled to a directed verdict when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the movant's opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary verdict. *Conrad v. Doe*, 95-518 (La. App. 5 Cir. 11/28/95), 665 So.2d 542, 545-46, *writ denied*, 95-3092 (La. 2/16/96), 667 So.2d 1058. However, suppose there is evidence produced in opposition to the motion with such quality and weight that reasonable and fair-minded men exercising impartial judgment might reach different conclusions. In that case, the court should deny the motion and the case submitted to the jury. *Id.* at 546. The trial judge has much discretion in determining whether or not to grant a motion for a directed verdict. *Id.* In reviewing the granting or denial of a motion for a directed verdict, the appellate court applies the standard of whether, viewing the evidence submitted, reasonable people could not reach a contrary verdict. *Id.*

In addition, the appellate court evaluates the propriety of a directed verdict in light of the substantive law related to the claims. *Id.*

> In this case, the Harley-Davidson warning in the owner's manual states:
>
> Pay strict attention to road surfaces and wind conditions. Keep both hands on the handlebar grips when riding the motorcycle. **Any twowheeled vehicle may be subject to upsetting forces such as** wind blasts from passing trucks, holes in the pavement, rough road surfaces and **rider control errors. These forces may influence the handling characteristics of your motorcycle. If you experience these conditions, reduce speed and guide the motorcycle with a relaxed grip to a controlled condition.** Do not brake abruptly or force the handlebar. This may aggravate an unstable condition.

(Emphasis in original). Harley-Davidson claims that the trial court erred in failing to grant its motion for directed verdict in its first assignment of error because 1) Plaintiffs "unequivocally failed to propose an alternative, adequate warning that would have prevented the alleged injuries"; 2) Plaintiffs failed to present evidence that overcame the fact that Mr. Mills stated that he did not remember the warnings contained in the owner's manual; 3) all of the experts agreed that if he had followed the manual's directions to "to slow down and relax his grip, Mr. Mills could have avoided the accident and maintained control"; and 4) the trial court allowed Mr. Mills' "lay person, self-serving testimony about how he would have reacted to said hypothetically modified warnings" into the record. We disagree.

Plaintiffs introduced evidence through the testimony of Mr. Mills, his friend Mr. Winfield, and expert Peter Sullivan that his motorcycle entered "weave mode" before the accident. The jury found that Mr. Mills' initial reaction to the disturbance before the accident was appropriate, considering the recommended course of action in the event the motorcycle becomes "subject to upsetting forces" per the warning given by Harley-Davidson. He and Mr. Winfield testified that Mr. Mills slowed down, Mr. Winfield was able to pull up beside him from behind, and Mr. Mills released the throttle as Mr. Winfield dropped back to allow him to maneuver to attempt to regain control of the bike. Harley-Davidson's experts, Dr.

James Brendelson and Todd Frank, agreed that the owner's manual Mr. Mills received with the purchase of his motorcycle did not mention "weave mode." Further, Dr. Brendelson's opinion strongly suggested that he did not believe a specific warning about "weave mode" was necessary because the engineering design of the bike eliminated the possibility of the bike entering into "weave mode." However, he did acknowledge that "weave mode" theoretically occurs at plus or minus 70 miles per hour. Further, the speed limit of I-10 where the accident occurred was 70 miles per hour. Because there was no specific warning about the "weave mode" phenomena, the jury found that suggesting Harley-Davidson should have provided a warning about "weave mode" specifically was an alternate or adequate warning sufficient to meet the requirements of the LPLA. Also, including a warning about "weave mode" would have required Harley-Davidson to notify the motorcycle user of the possibility he could lose control of the bike while riding on a road free of debris in good weather while obeying the posted speed limit and following standard safety protocols. That possibility may have been more significant than the manufacturer assumed, according to Mr. Mills, Mr. Winfield, and Plaintiff's expert Mr. Sullivan, despite Harley-Davidson's claim that the motorcycle design prevented the bike from entering "weave mode."

Further, the jury agreed that the cause of the accident posited by the Plaintiffs was most credible. A court of appeal may not set aside a trial court's or jury's finding of fact without "manifest error" or unless it is "clearly wrong." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993). The Supreme Court has announced a two-part test for the reversal of a fact-finder's determinations:

1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Id.* Upon review of the entire record, we find that the jury's findings are reasonable. *See id.* Although conflict exists in the testimony, we find that a reasonable fact-finder could have potentially credited the testimony of any of the witnesses; thus, we will not disturb the jury's conclusions. *Id.*

Furthermore, we disagree with Harley-Davidson's argument[1] that a risk-utility analysis, as stated in *Summers v. FCA US LLC,* 23-1777, 2024 WL 3925169 (E.D. La. Aug. 23, 2024), is necessary for the determination of this case. Instead, we find *Krummel v. Bombardier Corp.*, 206 F.3d 548, 557 (5th Cir. 2000) (Dennis, Circuit Judge, dissenting), correctly states the burden of proof which held "there is no Louisiana or federal appellate court decision holding that, under the LPLA, (1) the adjudication of a failure to warn claim categorically requires articulation and application the 'risk-utility' test, or (2) the adjudication of a design defect or a failure to warn claim categorically requires the plaintiff to introduce expert evidence concerning the frequency of similar accidents, economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of an alternative design or a proposed warning or instruction." *Id.*

Based on the foregoing, the trial court did not abuse its discretion in denying Harley-Davidson's motion for a directed verdict in its favor. *See* La. C.C.P. art. 1810; *Reed v. Columbia/HCA Info. Sys., Inc.*, 00-1884 (La. App. 5 Cir. 4/11/01), 786 So.2d 142, 145, *writ denied,* 01-1384 (La. 6/22/01), 794 So.2d 796. After considering all evidence in the light most favorable to the movant's opponent and with all reasonable inferences, we find no merit in Harley-Davidson's argument that the trial court erred in not granting its motion for a directed verdict. The evidence at trial opposing the motion was of "such quality and weight that

---

[1] Harley-Davidson sent a letter to the court on September 4, 2024, to advise of the decision in *Summers, infra.*

reasonable and fair-minded men, exercising impartial judgment, might reach different conclusions." *See id.* Thus, the court correctly submitted the matter to the jury, and Harley-Davidson's first two assignments were without merit.

*Assignment of error three*

The trial court abused its discretion in allowing Peter Sullivan to testify because his opinions were impermissible *ipse dixit* and the product of rank speculation, making them impermissible under La. C.E. art. 702 and *Daubert*. The introduction of Sullivan's impermissible opinions prejudiced Harley-Davidson and certainly affected the outcome of the case.

Harley-Davidson has previously argued to this Court that the Mills' expert, Peter Sullivan, should not have been allowed to testify at trial. In a prior writ, *Derrick Mills and Noi Mills v. Harley-Davidson Motor Co., Inc., et al.*, 23-14 (La. App. 5 Cir. 1/24/23) (unpublished writ disposition), *writ denied*, 23-248 (La. 3/9/23), 357 So.3d 353, we considered the court's pre-trial denial of Harley-Davidson's motion in limine to exclude Mr. Sullivan as an expert witness. It argued then, as it does on appeal, that Mr. Sullivan's testimony is *ipse dixit*[2] and based on unreliable methodology. In previously finding no error in the trial court's denial of Harley-Davidson's motion in limine, we opined:

> A review of Mr. Sullivan's report and deposition indicates that his opinions were based on the physical evidence present on the motorcycle and its tires, the statements and sworn testimony given by Mr. Mills, the statements and sworn testimony given by the eye-witness, Mr. Kervin Winfield, and the scientific research and literature regarding motorcycle instability and weave mode oscillations. Specifically, Mr. Mills and Mr. Winfield, testified that the front wheel and handlebars began to wobble just before Mr. Mills ran off of the roadway. This is consistent with the crash report.
>
> Relator argues that Mr. Sullivan's expert testimony should be excluded because his opinions are speculative. A review of Mr. Sullivan's report as to the cause of Mr. Mills' accident lists Mr. Sullivan's education, decades of experience riding, testing and reporting on motorcycles, his certifications and publications, and review of studies and literature. The report states that his opinions are based on his education, training and experience, as well as inspections and his review of documents produced in this case and his review of studies and peer reviewed literature. In his deposition, Mr. Sullivan

---

[2] Black's Law Dictionary (7th ed. 1999) defines *ipse dixit* to mean, in part, "[s]omething asserted but not proved."

reiterated his qualifications. He testified that in order to formulate his opinions, he performed an inspection of the crash site and Mr. Mills' motorcycle. He examined the motorcycle both physically, mechanically, and "downloaded it" electronically. He performed a tire scuff analysis and reconciled it with the testimony of the witnesses, the testimony from service personnel and the other case materials.

Mr. Sullivan's report and deposition testimony indicate that he has specialized knowledge that may assist the trier of fact in resolving the cause of the accident in this case. The report and deposition testimony show that Mr. Sullivan reached his conclusions after reviewing literature and studies regarding motorcycle instability, and applied these principals and methods to the facts of this case.

*Law of the case*

In *Normand v. Mr. Mudbug, Inc.*, 19-272 (La. App. 5 Cir. 12/30/19), 286 So.3d 1260, 1265, we observed:

> Generally, when an appellate court considers arguments made in supervisory writ applications or responses to such applications, the court's disposition on the issue considered usually becomes the law of the case, foreclosing re-litigation of that issue either at the district court on remand or in the appellate court on a later appeal. *Jeff Mercer, L.L.C. v. State, Dep't of Transp. & Dev.*, 14-1752 (La. App. 1 Cir. 6/5/15), 174 So.3d 1180, 1185, *writ denied*, 15-1624 (La. 10/30/15), 179 So.3d 618.

The reasons for the law of the case doctrine are to avoid relitigation of the same issue, to promote consistency of results in the same litigation, and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. *Shaffer v. Stewart Const. Co., Inc.*, 03-971 (La. App. 5 Cir. 1/13/04), 865 So.2d 213, *writ denied*, 04-420 (La. 4/2/04), 869 So.2d 886, *citing Jones v. McDonald's Corp.*, 97-2287 (La. App. 1 Cir. 11/6/98), 723 So.2d 492, 494. However, reconsidering a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. *State v. Falcon*, 13-849 (La. App. 5 Cir. 3/12/14), 138 So.3d 79, 87-88, *writ denied*, 14-769 (La. 11/14/14), 152 So.3d 877.

After reviewing the decision in our previous writ and Mr. Sullivan's trial testimony, we find no basis for disturbing our prior ruling that Mr. Sullivan was correctly allowed to testify as an expert witness and that his opinions were admissible.

*Assignment of error four*

(4) The trial court abused its discretion in permitting Mr. Mills to testify regarding how he would have changed the warning in Harley-Davidson's Owner's Manual and how he would have reacted to that hypothetically changed warning. The introduction of this impermissible, self-serving lay opinion testimony prejudiced Harley-Davidson and certainly affected the outcome of the case.

La. C.E. art. 701 states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

A trial court has broad discretion concerning the admissibility and relevancy of evidence, and a trial court's ruling will not be disturbed on appeal absent a clear abuse of discretion. *Succession of Gendron*, 21-14 (La. App. 5 Cir. 6/23/21), 325 So.3d 584, 595, *writ denied*, 21-1075 (La. 11/23/21), 328 So.3d 79. The reviewing court must consider whether the complained-of ruling was erroneous and whether the error affected a substantial right of the complaining party. *Id.* If a party's substantial right was not affected by an evidentiary ruling, reversal is not warranted. The complainant has the burden of proof. *Id.*

In this case, Mr. Mills was not qualified as an expert at trial, although he did testify about his many years of experience riding motorcycles. Before the accident, he had never experienced the type of "oscillation" or "weave mode," which he claims caused him to lose control of his motorcycle. During his testimony, counsel asked him whether the Harley-Davidson owner's manual he received included specific instructions on how to operate the motorcycle when a

weaving event occurred.  The fact that the operation manual does not address this particular hazard is uncontested.  Mr. Mills' conclusion when asked about what he would have done differently if the manual included an adequate warning was:

> MR. PERCY:
> If the more specific information you just described [had been in the manual], how would you have reacted to that?
>
> MR.  MILLS:
> I would have - if I would have saw what it would do and it would have told me the reaction I needed to take, I would have at least tried to do it.

Whether more information in the owner's manual would have changed his reaction to his motorcycle going into "weave mode" did not require any expertise, and it was rationally based on his perception and helpful to the jury in determining the facts at issue.  See La. C.E. art. 701; *Rideau v. State Farm Mut. Auto.  Ins.  Co.*, 06-0894 (La. App. 1 Cir. 8/29/07), 970 So.2d 564, 572, *writ denied*, 07-2228 (La. 1/11/08), 972 So.2d 1168.

Even if we were to find Mr. Mills' testimony erroneously admitted, we cannot say the testimony was so prejudicial to the defense as to constitute reversible error.  The jury heard expert testimony about the cause of Mr. Mills' accident by both parties and whether the manual provided at the time of purchase should have contained a warning about "weave mode."  Mr. Mills' testimony on this issue is harmless, given the evidence presented.  This assignment is without merit.

### *The Mills' answer to the appeal*

In their answer to Harley-Davidson's appeal, the Mills' seek an increase to the following categories of general damages, which they claim are "unreasonably low": past and present physical pain and suffering, future physical pain and suffering, mental pain and anguish, future mental pain and anguish, loss of enjoyment of life, and loss of consortium for Noi Mills.

The table below summarizes the jury's award of damages.

| Medical expenses: Past and present | $85,000.00 |
|---|---|
| Future Medical Expenses | $10,000.00 |
| Physical Pain and Suffering: Past & Present | $10,000.00 |
| Future Physical Pain and Suffering: | $10,000.00 |
| Mental Pain and Anguish | $10,000.00 |
| Future Mental Pain and Anguish | $0 |
| Loss of Enjoyment of Life | $0 |
| Noi Mills: Loss of Consortium | $0 |

The district court partially granted the Mills' Motion for a JNOV and modified the jury's award as follows.

| **Medical expenses: Past and present** | **$168.197.32** |
|---|---|
| **Future Medical Expenses** | **$72,000.00[3]** |
| Physical Pain and Suffering: Past & Present | $10,000.00 |
| Future Physical Pain and Suffering: | $10,000.00 |
| Mental Pain and Anguish | $10,000.00 |
| **Future Mental Pain and Anguish** | **$10,000.00** |
| Loss of Enjoyment of Life | $0 |
| Noi Mills: Loss of Consortium | $0 |

In *Coco v. Winston Indus., Inc.*, 341 So. 2d 332, 335 (La. 1976), the Louisiana Supreme Court explained the standard of review for a trial court's damages award:

---

[3] We note the least conservative estimate for Mr. Mills' future medical expenses (three laser treatments and additional surgery on his left elbow) based on Dr. Short's testimony is $79,000.00.

We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award…Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court… It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.

[citations omitted].

*The trial court's increase in damages*

When a trial court grants a JNOV on the issue of damages, the appellate court must examine the record to determine whether the trial court's conclusions on quantum are manifestly erroneous and should not disturb the quantum unless the trial court abused its discretion. *Roger v. Cancienne*, 538 So.2d 670 (La. App. 4th Cir.1989), *writ denied*, 542 So.2d 1382 (La. 1989). After a review of the record, we find no abuse of discretion in the district court's adjustment of the Mills' damages award to include the full amount of past and future medical expenses by increasing the awards from $95,000 to $240,197.32.

*The issue of again raising the amount of damages on appeal*

For this Court to disturb the fact-finder's award of special damages, there must be no factual basis for the fact-finder's determination, and the finding must be clearly wrong. *McDowell v. Diggs*, 17-755 (La. App. 1 Cir. 10/3/18), 264 So.3d 489, 496. In this case, the trial court gave detailed explanations in its August 17, 2023 judgment as to why it found the amounts awarded by the jury insufficient. We accept the trial court's factual basis for the increases and cannot say that the trial court was clearly wrong in changing the jury's awards. Accordingly, we decline to revisit the issue of quantum as to those claims.

*The jury's awards of no damages*

*Carlin v. Blanchard*, 537 So.2d 303 (La. App. 1 Cir. 1988), states the standard for reviewing a jury's damage award:

> A jury is given much discretion in fixing the amount of damages due. This determination will not be disturbed on appeal unless the jury clearly abused its much discretion. The question presented upon appellate review is not whether a different amount might have been more appropriate, but whether the amount awarded by the jury can reasonably be supported by the evidence and justifiable inferences from the evidence.

Id. at 309.

Here, the jury did not award damages to the Mills' for a Loss of Enjoyment of Life or Mrs. Mills' Loss of Consortium claim. The trial court addressed each of these jury awards in its judgment that partially granted the Plaintiff's JNOV. For the loss of enjoyment of life claim, the trial court observed:

> Due to the Plaintiffs' failure to prove that the Jury's award of $0.00 for loss of enjoyment of life was erroneous and should be increased, it appears that the evidence does not meet the heightened standard for granting a JNOV. The motion should be denied as there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. The Jury heeded the extensive testimony of Plaintiff and Noi Mills regarding the fact that motorcycle riding governed Plaintiffs sense of identity and was a form of self-care. However, the Jury concluded that Plaintiffs enjoyment of life is broader than just riding a motorcycle. Accordingly, the Jury's finding of no loss of enjoyment of life was not an abuse of its discretion, and thus, reasonable.

The trial court similarly opined about Mrs. Mills' loss of consortium claim:

> Finally, due to the Plaintiffs' failure to prove that the Jury's award of $0.00 for loss of consortium on behalf of Plaintiff, Noi Mills, was erroneous and should be increased, it appears that the evidence does not meet the heightened standard for granting a JNOV. The motion should be denied as there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. The Jury listened to the evidence that the Plaintiffs remained together as a married couple for the past five and a half (5-1/2) years, and they did not have any separations marriage counseling, etc. Furthermore, they resumed their marital relationship within two (2) months of the accident. Therefore, the Jury did not deem it compensable for the consortium claim based on the amount of light in the room during intimate moments. This finding by the Jury was supported by the evidence, and thus, reasonable.

After a review of the record, we agree with the trial court's assessment that there is a factual basis for the jury's decision not to award damages in these two categories. We decline to address the quantum issues on appeal because we find no manifest error in the trial court's ruling on these issues.

## DECREE

We affirm the trial court's judgments denying Harley-Davidson's motions for a new trial and judgment notwithstanding the verdict on liability and quantum issues. We also affirm the trial court's amendment of the jury awards to the Mills.

**AFFIRMED**

DERRICK MILLS, ET AL.                    NO. 24-CA-57

VERSUS                                   FIFTH CIRCUIT

HARLEY-DAVIDSON MOTOR                    COURT OF APPEAL
COMPANY, INC., ET AL.
                                         STATE OF LOUISIANA


## JOHNSON, J., CONCURS IN PART, DISSENTS IN PART WITH REASONS

I respectfully concur in part, and dissent in part, with the majority's opinion. I agree that Plaintiffs satisfied their burden of proof under La. R.S. 9:2800.57, and the district court did not err or abuse its discretion in denying Harley-Davidson's Motion for Directed Verdict. I also find the district court's evidentiary rulings were not an abuse of its discretion. However, I find that there was an abuse of discretion by the jury, and then the district court in its determination of some of the damages awards.

Plaintiffs filed their motion on quantum and requested that the district court raise the amount awarded for future and past medical expenses[4], pain and suffering, mental anguish, and loss of enjoyment of life. On appeal, they also request an increase of the award for loss of consortium.

In reviewing findings of fact, appellate courts employ a "manifest error" or "clearly wrong" standard of review. *Antill v. State Farm Mut. Ins. Co.*, 20-131 (La. App. 5 Cir. 12/2/20), 308 So.3d 388, 401-02 (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are more reasonable. *Id*. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot

---

[4] Past medical expenses were stipulated to by the parties.

24-CA-57                                 1

be manifestly erroneous or clearly wrong. *Id.* While an appellate court must review the conclusions in light of the entire record, it "must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently." *Id.*

An award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty and generally turns on questions of credibility and inferences. *Menard v. Lafayette Ins. Co.*, 09-1869 (La. 3/16/10), 31 So.3d 996, 1006-08. Before reversing a jury's conclusions of fact, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong. *Guillory v. Ins. Co. of N. Am.*, 96-1084 (La. 4/8/97), 692 So.2d 1029, 1032.

Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. *Jackson v. Underwriters at Lloyd's of London*, 21-15 (La. App. 5 Cir. 9/29/21), 329 So.3d 1029, 1040-41, *writ denied,* 21-1591 (La. 1/12/22), 330 So.3d 617, *citing Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So.2d 838, 843. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. *Id.*

A trier of fact's findings as to comparative fault are factual, and in the absence of clear or manifest error, must be upheld on appeal. *Tromatore v. Jefferson Par. Hosp. Servs. Dist.*, 21-551 (La. App. 5 Cir. 5/26/22), 341 So.3d 1269, 1279. An award for loss of consortium damages is reviewed under an abuse of discretion standard. *Id.* at 1281.

General damages are those that may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle that cannot be definitely measured in monetary terms. *Jones v. Market Basket Stores, Inc.*, 359 So.3d at 464. Appellate courts

must look at past general damage awards for similar injuries in determining whether the trier of fact "abused its much discretion." *Pete v. Boland Marine & Mfg. Co., LLC*, 23-170 (La. 10/20/23), 379 So.3d 636, 642-43, *reh'g denied,* 23-170 (La. 12/7/23), 374 So.3d 135. "Without an examination of other general damage awards in similar cases, appellate courts have no objective, neutral, or equitable way to measure whether a general damage award is, in fact, an abuse of discretion." *Id.* at 643. Moreover, the "abuse of discretion" standard of review, absent a study of prior awards, is overly subjective and, consequently, meaningless." *Id.* The review of prior awards is a starting point in determining whether the trier of fact abused its discretion in assessing an amount of general damages. *See id.* "[T]he adequacy or inadequacy of the award should be determined by the facts and circumstances particular to the case under consideration. *Id.* at 644. If the reviewing court finds merit in appellants' claims of excessiveness or insufficiency, then "the court is also to consider those prior awards to determine 'the highest or lowest point which is reasonably within that discretion.'" *Id.*

In addition, the defendant must compensate a plaintiff for the full extent of the injuries plaintiff sustained, even if defendants simply aggravated a pre-existing condition. *Antill*, 308 So.3d at 405-06. However, before recovery can be granted for aggravation of a pre-existing condition, a causative link between the accident and the victim's current condition must be established. *Id.* at 406.

The jury's award of damages is summarized in the table below.

| Medical expenses: Past and present | $85,000.00 |
| Future Medical Expenses | $10,000.00 |
| Physical Pain and Suffering: Past & Present | $10,000.00 |
| Future Physical Pain and Suffering: | $10,000.00 |
| Mental Pain and Anguish | $10,000.00 |

| | |
|---|---|
| Future Mental Pain and Anguish | $0 |
| Loss of Enjoyment of Life | $0 |
| Noi Mills: Loss of Consortium | $0 |

The district court partially granted Plaintiffs' Motion for Judgment Notwithstanding the Verdict and modified the jury's award as follows.

| | |
|---|---|
| **Medical expenses: Past and present** | **$168.197.32** |
| **Future Medical Expenses** | **$72,000.00[5]** |
| Physical Pain and Suffering: Past & Present | $10,000.00 |
| Future Physical Pain and Suffering: | $10,000.00 |
| Mental Pain and Anguish | $10,000.00 |
| **Future Mental Pain and Anguish** | **$10,000.00** |
| Loss of Enjoyment of Life | $0 |
| Noi Mills: Loss of Consortium | $0 |

I find no error in the district court's adjustment of Plaintiff's award to include the full amount of past medical expenses and future medical expenses by increasing the awards from a sum of $95,000 to $240,197.32. A plaintiff shows the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. *Menard*, 31 So.3d at 1006. The parties stipulated to the amount of past medical expenses, and the uncontroverted testimony of Mr. Mills' treating physician was that he would need to undergo future procedures. Although, until shortly before the trial started, Mr. Mills stated repeatedly that he would not undergo any additional procedures, Dr. Short opined that the laser surgeries would be necessary given the condition of Mr. Mills' scarring. Mr. Mills established that his future medical expenses will more

---

[5] I note the least conservative estimate for Mr. Mills' future medical expenses (three laser treatments and additional surgery on his left elbow), based on Dr. Short's testimony, is $79,000.00.

24-CA-57                                           4

probably than not be incurred. *See id.*, *citing Stiles v. K Mart Corp.,* 597 So.2d 1012, 1012 (La. 1992) (remanding for a determination of "an award for future medical expenses which the medical evidence established that plaintiff, more probably than not, will be required to incur"). The district court's increase of the award for future mental pain and anguish was also appropriate considering that Mr. Mills will have to undergo additional medical procedures and reported developing a fear of heights or re-tearing his knee while at work as an operator at a petrochemical plant.

However, I find that the court's verdict that awarded over $240,000.00 in past and future medical expenses, but only $40,000.00 in general damages is inconsistent in light of the record and is an abuse of discretion. *See Lockett v. UV Ins. Risk Retention Grp., Inc.*, 15-166 (La. App. 5 Cir. 11/19/15), 180 So.3d 557, 567 (affirming the district court judgment that increased the amount of general damages awarded to $125,000 after finding the jury's award of $121,826.99 in past and future medical expenses, but only $25,000 in past general damages and no future general damages, was "totally inconsistent in light of the record, and constitutes an abuse of discretion"); *see also Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, (stating "the ultimate question has been whether the factfinder made inconsistent awards and thus abused its discretion.").

Here, even after the district court amended the jury award to include all of Mr. Mills' future medical expenses, "the failure to make a [commensurate or proportional] general damage award was an abuse of discretion when 'the jury determined that plaintiff suffered injuries causally related to the accident which required medical attention, and is still suffering an injury that will, in fact, require medical attention in the future.'" *See Simon v. Auto. Club Inter-Ins. Exch.*, 20-156, (La. App. 5 Cir. 10/13/21); 329 So.3d 1072, 1082. The district court increased the jury's award from $0 to $10,000.00 in future mental pain and anguish after partially granting Plaintiffs' Judgment Notwithstanding the

Verdict. However, we still find the court abused its discretion in awarding Plaintiffs $40,000.00 in general damages; $20,000.00 for past and future physical pain and suffering and $0 for loss of enjoyment of life and loss of consortium.

First, "one injured through the fault of another is entitled to full indemnification for damages caused thereby." *Koertge v. State Farm Fire & Cas. Ins. Co.*, 52,503, (La. App. 2 Cir. 2/27/19); 266 So.3d 441, 446, *citing* La. C.C. art. 2315. A burn is defined as "a tissue injury resulting from excessive exposure to thermal, chemical, electrical, or radioactive agents." AMJUR POF 3d 197 *Recovery for Severe Burn Injuries* § 1 (Originally published in 1998; November 2024 Update). "Other sources of burn injury include [. . .] friction, (for example, a motorcycle accident victim slides across the pavement)" *Id.* Burns are serious, painful wounds of varying degrees of severity. *Id.* Second-degree burns are "more severe [. . .]; deep enough to damage some, but not all of the dermal layer of skin. *Id.* at § 14. Third-degree burns are full-thickness burns which occur when both the entire epidermis and the dermis (the full thickness of the skin) have been destroyed. *Id.* Considering Mr. Mills' second and third degree burns to his palms of his hands, knees, elbows, and toe – 22% of his body – which Dr. Short wanted to monitor for a minimum of six months, I find that the minimum reasonable award for past physical pain and anguish is $108,000.00. *See id.* (affirming an award of $265,000 in general damages, and over $115,000 (as amended) for past and future medical expenses for a teenager who sustained third degree burns on the back of her scalp); *Thomas ex rel. Maison Deville Care Ctr.*, 75,460, (La. Dist. Ct. Mar. 28, 2005), 2005 WL 1123800, at *5 (awarding $25,000 in general damages to 42 year-old bedridden man with brain injury who sustained second and third degree burns to his genitals that healed in eighteen days); *Garrett v. Boh Bros. Const. Co., LLC*, 04-804 (La. App. 5 Cir. 1/11/05); 894 So.2d 366, 373 (affirming general damages

award of $40,500 to woman who sustained second and third degree burns on her palm, forearm, and leg that were treated for 17 months, but did not require skin grafts); *See also Stauder v. Shell Oil Co.*, 22-0593 (La. App. 4 Cir. 6/3/24)(noting strict application of *Pete* to anchor current awards to past jurisprudential awards did not consider inflation); *Compare with Dimarco v. Jackson Indus. Serv. Inc.*, 21-530 (La. App. 5 Cir. 6/15/22), 345 So.3d 1072, 1088, *abrogated by Pete v. Boland Marine & Mfg. Co., LLC*, 23-170 (La. 10/20/23), 379 So.3d 636 (discussing support in the jurisprudence of $2,500 per month quantum for soft tissue injury[6]). Further, in light of Dr. Short's testimony that Mr. Mills will require laser treatments on his elbow, knee, and toe that will take at least 18 weeks to determine if treatment goals are met, I find that the minimum reasonable award for future pain and suffering is $27,000.00.

Next, Mrs. Mills stated that her husband was different after the accident. She said that they dated for eight years before they married and they never argued, although they have been through a lot. She said that six years after the accident, his skin does not feel the same, and she gets "really squeamish" and has trouble focusing while being intimate with her husband. Mr. Mills also expressed discomfort with his wife looking at his scars. Mrs. Mills also testified that without his outlets to cope with things, her husband is in the house and his friends are gone. She also stated her husband is anxious when driving the family vehicle.

In reviewing an award for loss of consortium, it is necessary to evaluate the elements that comprise a spouse's loss of consortium claim. The compensable elements include loss of love and affection, loss of companionship, loss of material services, loss of support, impairment of sexual relations, loss of

---

[6] *See* AMJUR POF 3d 197 *Recovery for Severe Burn Injuries* § 1, *supra*.

aid and assistance, and loss of felicity. Proof of any one of these components is sufficient for an award of consortium. A loss of consortium award is a fact-specific determination to be decided on a case-by-case basis and is disturbed only if there is a clear abuse of discretion. *Pennison v. Carrol*, 14-1098 (La. App. 1 Cir. 4/24/15), 167 So.3d 1065, 1079-80, *writ denied sub nom. Pennison v. Henry*, 15-1214 (La. 9/25/15), 178 So.3d 568; *Campbell v. Webster Par. Police Jury*, 36,391 (La. App. 2 Cir. 9/18/02), 828 So.2d 170, 173. "Additionally, the law is very well settled that the defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." *Campbell v. Webster Par. Police Jury*, 36,391 (La. App. 2 Cir. 9/18/02), 828 So.2d 170, 173.

"Loss of enjoyment of life ... refers to detrimental alterations of a person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed" prior to the injury. *Barras v. Progressive Sec. Ins. Co.*, 14-898 (La. App. 3 Cir. 2/11/15), 157 So.3d 1185, 1192, *writ denied,* 15-512 (La. 6/1/15), 171 So.3d 261, *citing McGee v. A C and S, Inc.,* 05-1036 (La. 7/10/06), 933 So.2d 770, 773. "[W]hether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury." *Id.* Considering that Mr. Mills is no longer able to mitigate the symptoms of his PTSD and depression through his riding and other hobbies, platonic relationships and camaraderie with friends, we increase his award to $10,000 for loss of enjoyment of life. *See Augustine*, 18 So.3d at 769-770 (finding that the trial court was correct in granting plaintiffs' motion for JNOV with regards to the jury's award for loss of enjoyment of life, and increasing award from $1,000 to $10,000. Since the motor vehicle accident, Mr. Mills could only walk two miles daily (as opposed to four), could no longer maintain her rose garden or flower's beds, perform household chores, developed fear of driving, and sexual relations

with her husband decreased from 2-3 times a week to once a month). *Barras*, *supra* (affirming $2,000 award to a husband whose injured wife could no longer assist him post-surgery, experienced limitations in terms of executing household chores after motor vehicle accident. The husband also testified that wife's injury "caused stress in their relationship and it was exhausting).

Further, because of Plaintiffs' uncontroverted testimony that the dynamics of their marital relationship, including the division of labor and quality of the intimacy between them has changed since the accident, we find that the lowest appropriate award for loss of consortium for Mrs. Mills is $25,000. *See Baack v. McIntosh*, 20-1054 (La. 6/30/21), 333 So.3d 1206, 1216-17 (affirming $35,000 award to wife based on decreased sexual relations with injured husband, and his inability to help out at home, and withdrawal from society); *Allstate Ins. Co. v. Reynolds*, 97-1178 (La. App. 5 Cir. 5/13/98), 712 So.2d 981, 989, *writ denied*, 98-1583 (La. 6/24/98), 719 So.2d 483 (finding award of $10,000 for loss of consortium was not abuse of discretion where testimony of wife injured in car accident and husband regarding loss of companionship and society and dramatic decrease in sexual relations was uncontradicted and consistent with treating physician's medical findings); *Augustine v. SAFECO Nat. Ins. Co.*, 08-1515 (La. App. 3 Cir. 6/10/09), 18 So.3d 761, 771 (reinstating jury's $2,000 award to husband for diminished sexual relationship with injured wife who could also no longer assist with maintaining the home or eight-acre property).

To sum, I find that the jury and the district court may have impermissibly shifted their focus on Plaintiffs' resilience versus compensating them for "the full extent of the injuries plaintiff sustained," however short a period the fact-finder found it may have been. *See Antill*, 308 So.3d at 401-02. The jury found that Plaintiffs' marital relationship had been interrupted for two months— therefore, I find Plaintiffs should have been compensated for two months' loss of consortium. Similarly, I find that the failure to compensate Mr. Mills, a veteran

of our country's armed forces, for the loss of being able to mitigate the symptoms of his PTSD and depression through his riding and other hobbies, platonic relationships and camaraderie with friends because of his injuries is an abuse of discretion.

Having reviewed the testimony and exhibits extensively, and in consideration of the severity of the Plaintiffs' injuries and charge given to the appellate courts by *Pete*, *supra*, I would amend damages awards as follows: Past Physical Pain and Suffering from $10,000 to $108,000; Future Pain and Suffering from $10,000 to $27,000; Mr. Mills' loss of enjoyment of life from $0 to $10,000; and Mrs. Mills' loss of consortium from $0 to $25,000.

| | |
|---|---|
| Medical expenses: Past and present | $168.197.32 |
| Future Medical Expenses | $72,000.00 |
| ***Physical Pain and Suffering: Past & Present*** | ***$108,000.00*** |
| ***Future Physical Pain and Suffering:*** | ***$27,000.00*** |
| Mental Pain and Anguish | $10,000.00 |
| Future Mental Pain and Anguish | $10,000.00 |
| ***Loss of Enjoyment of Life*** | ***$10,000.00*** |
| ***Noi Mills: Loss of Consortium*** | ***$25,000.00*** |

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 10, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**24-CA-57**

**E-NOTIFIED**
23RD JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JASON VERDIGETS (DISTRICT JUDGE)
CARL J. GIFFIN, JR. (APPELLANT)          HOWARD B. KAPLAN (APPELLANT)

**MAILED**
EVAN W. THOMSEN  (APPELLANT)       ANNA Q. SKIAS (APPELLEE)          MARK A. KIRCHER  (APPELLANT)
411 EAST WISCONSIN AVENUE          FALCON J. MIRE (APPELLEE)         SARA P. SCULLEN  (APPELLANT)
SUITE 2400                         JAMIE I. SCHUTTE (APPELLEE)       QUARLES & BRADY, LLP
MILWAUKEE, WI 53202                MATTHEW I. PERCY (APPELLEE)       411 EAST WISCONSIN AVENUE
                                   R. RYLAND PERCY, III (APPELLEE)   SUITE 2400
                                   ATTORNEYS AT LAW                  MILWAUKEE, WI 53202
                                   712 NORTH BURNSIDE AVENUE
                                   GONZALES, LA 70737